MODRESKI v GENERAL MOTORS CORPORATION

Docket No. 49015. Submitted March 11, 1981, at Lansing.—Decided
June 19, 1981.

Pauline Modreski injured her hand in an industrial accident in
1961 while working for the Fisher Body Division of General
Motors Corporation. Modreski was placed on permanent disabil-
ity in 1966 by General Motors and received 500 weeks of
workers' disability compensation. In 1972, Modreski sought
permanent and total disability benefits based on incurable
insanity. The hearing referee determined that Modreski was
totally and permanently disabled because of incurable insanity
and ordered General Motors to pay disability compensation
benefits with the Second Injury Fund paying differential bene-
fits. The appeal board affirmed the referee's determination. The
Court of Appeals denied leave to appeal by an order dated
December 15, 1975. In 1979, the Supreme Court remanded the
matter to the appeal board for further consideration in light of
the Court's decision in *Redfern v Sparks-Withington Co,* 403
Mich 63 (1978). See 404 Mich 823 (1979). The appeal board
determined that Modreski was not incurably insane as that
term was defined in *Redfern* and reversed the award of the
referee. Modreski appeals by leave granted. *Held:*

The Workers' Compensation Appeal Board properly held that
incurable insanity, as that term is used with respect to disabil-
ity compensation benefits, focuses on the claimant's grasp on
reality and ability to interact with his or her environment in a
healthy manner. The record in this matter supports the appeal
board's conclusion that this claimant was not incurably insane
when incurable insanity is so defined.

Affirmed.

1. Workers' Compensation — Findings of Facts — Appeal.
   Appellate court review of Workers' Compensation Appeal Board

References for Points in Headnotes
[1] 82 Am Jur 2d, Workmen's Compensation §§ 631, 634.
[2] 82 Am Jur 2d, Workmen's Compensation § 630.
[3] 82 Am Jur 2d, Workmen's Compensation § 301.
   Mental disorders as compensable under workmen's compensation
   acts. 97 ALR3d 161.

decisions is limited to reviewing the record for errors of law; findings of fact by the board are conclusive in the absence of fraud and board decisions will be set aside only when they are contrary to law or not supported by competent, material, and substantial evidence (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — INSANITY — APPEAL.

The propriety of the Workers' Compensation Appeal Board's interpretation and application of the Supreme Court's definition of incurable insanity for the purpose of disability benefits raises a question of law which is reviewable by the courts on appeal.

3. WORKERS' COMPENSATION — INSANITY.

The definition of incurable insanity for the purposes of workers' disability compensation benefits focuses only on the mental aspects of a disability; that is: whether there is a severe social disfunction when judged by the claimant's grasp of reality and ability to interact with his or her environment in a healthy manner.

*Goodman, Eden, Millender & Bedrosian,* for plaintiff.

*Otis M. Smith,* General Counsel, and *Willard W. Wallace* (by *E. R. Whinham,* of counsel), for General Motors Corporation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for the Second Injury Fund.

Before: BEASLEY, P.J., and BASHARA and MACKENZIE, JJ.

PER CURIAM. Plaintiff, Pauline Modreski, appeals by leave granted a November 26, 1979, order of the Workers' Compensation Appeal Board which held that plaintiff failed to establish that she is incurably insane under MCL 418.361(3)(f); MSA 17.237(361)(3)(f).

Plaintiff worked for General Motors from 1955 to 1966. In 1961, while she was working, part of an automobile door fell on her hand and caused her injury. Thereafter, plaintiff worked intermittently, but her condition worsened. Benefits were paid when she could not work. In 1966, plaintiff was placed on total disability by General Motors and compensation was paid through February 27, 1972, 500 weeks from the 1961 injury. On March 23, 1972, plaintiff petitioned for benefits due to total and permanent disability, alleging:

"Injury to right wrist, arm, shoulder, neck, back, head, headaches, legs, other parts of the body, nervousness, functional complaints, aggravation of pre-existing conditions known and unknown, and the complications, developments and sequelae thereof. General disability from injury of 3-6-66, permanent and total disability from injury of 12-29-61 or 3-6-66 * * * industrial loss of use of right arm and right leg (Workmen's Compensation Act Sec 361(2)(f) and (g)."

The hearing referee found that plaintiff met the test for incurable insanity under *Sprute v Herlihy Mid-Continent Co*,[1] where this Court said:

"An employee is incurably insane * * * if the occupationally-related mental or emotional illness which impairs the employee's mental processes is of totally disabling proportions and is likely to be of long and indefinite duration, thus making gainful employment impossible." (Citations and footnotes omitted.)

On the basis of the testimony of plaintiff and her psychiatrist, the hearing referee determined that plaintiff was permanently and totally disabled because of incurable insanity. General Motors was ordered to pay benefits and the Second Injury

_____
[1] 32 Mich App 574, 579; 189 NW2d 89 (1971).

Fund was ordered to pay differential benefits. The appeal board affirmed the order of the referee in a September 17, 1975, opinion. This Court denied leave to appeal on December 5, 1975, as to both defendants. By an order dated March 24, 1976, the Supreme Court held the case in abeyance and, on January 8, 1979, the Court remanded it to the appeal board for further consideration in light of *Redfern v Sparks-Withington Co.*[2]

On November 26, 1979, the appeal board, in a three to two decision, reversed its earlier decision to affirm the hearing referee, stating:

"This record establishes neurological or orthopedic disability on a functional basis. The organic basis that the disability might well have is not demonstrated. That disability on a functional basis is not incurable insanity has been established once and for all, at last, by the following comprehensive test set forth at 403 Mich 63, 85:

" 'We conclude that a worker's mental illness is "insanity" if he suffers severe social dysfunction and that a worker's intellectual impairment is "imbecility" if he suffers severe cognitive dysfunction. Social or cognitive dysfunction is "severe" if it affects the quality of the worker's personal, non-vocational life in significant activity comparably to the loss of two members or sight of both eyes, and is incurable if it is unlikely that normal functioning can be restored.'

"To circumvent these words by a finding that a two-member functionally-based loss (falling short of industrial loss of use as measured by the standards of *Burke, supra* [*Burke v Ontonagon County Road Comm,* 391 Mich 103; 214 NW2d 797 (1974)], and *DeGeer, supra* [*DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974)]) is indeed equal to the loss of the two members referred to in *Redfern, supra,* is a contradiction on its face. It would, moreover, welcome the

[2] 403 Mich 63; 268 NW2d 28 (1979), *Modreski v General Motors Corp,* 404 Mich 823 (1979).

reappearance of *Sprute*-attendant inequities listed hereinbefore.

"The facts of the instant case are not unlike those of *Redfern, supra,* as set forth in 403 Mich 63, 71, fn 2. See 1978 WCABO 3149. The *Redfern* Court refers, not to somatic disability with functional basis, but to 'the employee's mental capacity' 403 Mich 63, 78; 'mental illness' *id.,* 81; and 'loss of mental function' *ibid.* "

The majority conclusion that plaintiff is not incurably insane under the above quoted test from *Redfern, supra,* was based on its findings that: (1) plaintiff's mental capacity is relatively unchanged from before the work-related injury; (2) she was able to get along well with fellow employees and superiors; (3) she is no recluse, despite her physical difficulties; (4) her relationships with her neighbors and family are good; (5) she is "conversant" with her financial situation; (6) she is independent, has efficiently organized her life to accommodate her physical problems, and has a "great deal of family support"; (7) her planned move to a retirement home in Arizona evidenced her grasp of reality and sound mental health; (8) she was clear about her disabilities; (9) her divorce reflected sound mental health; and (10) the fact that she was tense, depressed, and tended to ramble did not evidence incurable insanity.

The dissenting opinion focused on the physical manifestations of plaintiff's mental disturbance. It contended that the following diagnosis by plaintiff's psychiatrist adequately supported a finding of incurable insanity under *Redfern:*

"Psychiatric diagnosis is (1) psychoneurotic reaction, conversion reaction, severe; (2) psychophysiologic reaction, musculo-skeletal type, severe. It is further to be noted that elements of a psychoneurotic reaction, depressive reaction type with agitation was also observed

although this would seem to be of lesser clinical significance from an historical point of view. This psychopathology is psychodynamically directly related to and constitutes an outgrowth and complication of the organic pathology she has had which is noted to have been occupationally related. It is further to be noted that those periods of time that she attempted to return to work subsequent to her initial difficulty beginning over ten years ago contributed toward the aggravation and further development of the psychopathological processes, helping to stamp more firmly within her own thinking the degree of her 'helplessness' and status of being 'an invalid'. Her condition is considered to be futile. It is my opinion that she is totally and permanently disabled because of this psychopathology. The gross interference of function of both of her legs, her back, the neck and right upper extremity precludes her performing even minimally in any type of gainful employment. She is further considered to be incurably mentally ill in terms of the psychopathology described and diagnosed."

The standard by which this Court reviews decisions of the Workers' Compensation Appeal Board was set out in *Fergus v Chrysler Corp (After Remand)*:[3]

"Findings of fact by the WCAB are conclusive in the absence of fraud, Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). Decisions of the appeal board will be set aside only when they are contrary to law or not supported by competent, material and substantial evidence on the whole record. *Tillotson v Penn-Dixie Cement Corp,* 47 Mich App 427; 209 NW2d 611 (1973), *lv den* 390 Mich 767 (1973). Our powers of review are, thus, limited to reviewing the record for errors of law."

The instant case presents a question of law, specifically, whether the appeal board correctly

[3] 67 Mich App 106, 111; 240 NW2d 286 (1976), *lv den* 406 Mich 870 (1979).

interpreted and applied the *Redfern* definition of incurable insanity. In *Redfern,* the Supreme Court formulated a definition of incurable insanity to replace that set forth in *Sprute, supra.* After noting that the effect of other compensable losses on the "quality of life" and the "ability to function normally in everyday life" is the point of focus in workers' compensation cases, the Court stated:

"We are persuaded that the legislative purpose was to provide compensation for severe mental illness or cognitive loss comparable in its impact on the quality of the personal, nonvocational life of the worker to the loss of two members or sight of both eyes, the other permanent and total disability categories in the original formulation of the present total and permanent disability provisions. * * * Such a loss may also affect the worker's wage earning capacity, but that is not determinative."[4] (Footnote omitted.)

The *Redfern* Court further stated:

"We are mindful of the imprecision of 'severe', 'comparable', and 'quality of life', but nevertheless have concluded that it is better that further definition evolve in the administrative and judicial decision of individual cases, including these cases on remand.

* * *

"The central definitional question in these cases concerns the severity of dysfunction that will be regarded as satisfying the statutory standard. Derangement, personality disintegration, inability to recognize or cope with reality, may constitute the requisite dysfunction, but it also may be established by other evidence of severe social dysfunction in significant non-vocational activity having an impact on the quality of life comparable to the loss of limbs or of sight."[5]

---

[4] *Redfern, supra,* 81.

[5] *Redfern, supra,* 83-84.

If the *Redfern* definition of incurable insanity is interpreted as focusing only on the mental aspects of a disability—a claimant's grasp on reality and ability to interact with his or her environment in a healthy manner—plaintiff is not incurably insane. On the other hand, if the *Redfern* definition of incurable insanity is interpreted as being applicable to a claimant whose "insanity" is substantially manifested in a panoply of physically disabling symptoms, there is support for the dissenting board members' claim that plaintiff is incurably insane.

We believe that the majority was correct in adopting the first of these interpretations and, thereby, finding that plaintiff was not incurably insane for purposes of receiving total and permanent disability benefits under MCL 418.361(3)(f); MSA 17.237(361)(3)(f).

The record in the instant case does not establish severe social dysfunction such as to satisfy the *Redfern* standard. Plaintiff appears to be very capable of meeting her daily needs, arranging for her future, dealing with her physical maladies, and communicating with her neighbors, friends, and relatives.

Plaintiff did not pursue her related claim of loss of industrial use of both legs and one arm before either the hearing referee or the appeal board. We do not believe that claimants who have failed to establish a loss of industrial use of two limbs should be able to circumvent this failure by claiming incurable insanity which is manifested in physical disabilities but accompanied by psychological processes which are otherwise clearly less than incurable insanity. To hold otherwise could bring about the anomalous result that a claimant who was suffering physical disabilities which did

not fit within the categories listed in MCL 418.361(3)(a)-(e) and (g); MSA 17.237(361)(3)(a)-(e) and (g)[6] could not qualify for permanent disability if his maladies had an organic basis but might qualify if his maladies were found to have a psychological basis.

We note that any entitlement to benefits for general disability concerning the 1966 injury, ordered pursuant to the referee's finding and affirmed by the board, was not affected by the board's decision on remand.

Affirmed.

---

[6] This statute provides:

"(3) Total and permanent disability, compensation for which is provided in section 351 means:

"(a) Total and permanent loss of sight of both eyes.

"(b) Loss of both legs or both feet at or above the ankle.

"(c) Loss of both arms or both hands at or above the wrist.

"(d) Loss of any 2 of the members or faculties in subdivisions (a), (b) or (c).

"(e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(f) Incurable insanity or imbecility.

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks fron the date of injury."