MODRESKI v GENERAL MOTORS CORPORATION

Docket No. 67570. Argued April 5, 1983 (Calendar No. 5).—Decided August 22, 1983.

Pauline Modreski was awarded total and permanent disability benefits because of incurable insanity caused by injuries received while employed by General Motors Corporation. Following remand by the Supreme Court to the Workers' Compensation Appeal Board, the board set aside the award on the ground that the plaintiff's incurable insanity had not been established as a matter of fact. The Court of Appeals, Beasley, P.J., and Bashara and MacKenzie, JJ., affirmed in an opinion per curiam (Docket No. 49015). The plaintiff appeals.

In a unanimous opinion by Justice Cavanagh, the Supreme Court *held:*

Physical manifestations resulting from mental illness or intellectual impairment which cause functional disabilities are not necessarily a basis for finding incurable insanity or imbecility under the workers' compensation act; under the act, mental illness is insanity if the worker suffers severe social dysfunction and intellectual impairment is imbecility if the worker suffers severe cognitive dysfunction, either of which affects the quality of the worker's personal, nonvocational life in significant activity comparably to the loss of two body members or the sight of both eyes.

1. A worker may recover total and permanent disability benefits for incurable insanity or imbecility if he has a mental or emotional illness which is work-related and likely to be of long and indefinite duration. The impairment of mental processes need not be so totally disabling as to preclude gainful employment. The focus of the test is not on a worker's ability to work, but on his ability to function outside the work setting.

2. The severe social or cognitive dysfunction which amounts to incurable insanity or imbecility under the workers' compen-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 82 Am Jur 2d, Workmen's Compensation §§ 301, 302, 596.
Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

sation act is analogous to physical manifestations which cause functional disabilities comparable to the loss of two body members or the sight of both eyes, but not all physical manifestations resulting from mental illness or intellectual impairment which cause functional disabilities are grounds for finding incurable insanity or imbecility.

3. In this case, the plaintiff failed to demonstrate incurable insanity within the meaning of the workers' compensation act. However, her claim of total and permanent disability because of the loss of the industrial use of her right arm and right leg was never addressed, requiring remand for consideration on the merits.

Affirmed in part, reversed in part, and remanded.

119 Mich App 198; 326 NW2d 386 (1981) affirmed in part and reversed in part.

1. WORKERS' COMPENSATION — TOTAL DISABILITY — INSANITY — IMBECILITY.

Physical manifestations resulting from mental illness or intellectual impairment which cause functional disabilities are not necessarily a basis for finding incurable insanity or imbecility under the workers' compensation act; under the act, mental illness is insanity if the worker suffers severe social dysfunction and intellectual impairment is imbecility if the worker suffers severe cognitive dysfunction, either of which affects the quality of the worker's personal, nonvocational life in significant activity comparably to the loss of two body members or the sight of both eyes (MCL 418.361[3]; MSA 17.237[361][3]).

2. WORKERS' COMPENSATION — TOTAL DISABILITY — INSANITY — IMBECILITY.

A worker may recover total and permanent disability benefits for incurable insanity or imbecility caused by work-related mental or emotional illness likely to be of long and indefinite duration; the impairment of mental processes need not be so totally disabling as to preclude gainful employment, but must be a severe social or cognitive dysfunction which significantly affects the worker's ability to function outside the work setting comparable to the loss of two body members or the sight of both eyes (MCL 418.361[3]; MSA 17.237[361][3]).

*Goodman, Eden, Millender & Bedrosian* (by *Morton A. Eden* and *Diane M. Kwitoski; Gary Granader,* of counsel) for the plaintiff.

*Otis M. Smith,* General Counsel, General Motors Corporation, and *Willard W. Wallace (E. R. Whinham,* of counsel) for defendant General Motors Corporation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for defendant Second Injury Fund.

CAVANAGH, J. In this case, we are asked to revisit the definitions of work-related incurable insanity and imbecility set forth in *Redfern v Sparks-Withington Co,* 403 Mich 63; 268 NW2d 28 (1978).[1]

I

Plaintiff began working for defendant General Motors Corporation in 1955. On December 29, 1961, she suffered a work-related injury when an automobile door fell on her right hand. After the injury, she returned to work, but her condition worsened. She worked intermittently, and weekly general disability benefits were paid when she did not. Finally, on September 12, 1966, GMC placed plaintiff on total disability and paid her general disability benefits through February 27, 1972, the date on which 500 weeks of benefits had been paid for the 1961 injury.

On March 22, 1972, plaintiff petitioned for total and permanent disability benefits, alleging both incurable insanity and the loss of industrial use of

---

[1] *Costs awarded sub nom Legut v Detroit Window Cleaning Co,* 406 Mich 1124 (1979).

her right arm and right leg.[2] After a hearing, the hearing referee found, *inter alia,* "that plaintiff became totally and permanently disabled as defined pursuant to the test as set forth in *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574; 189 NW2d 89 (1971) in MCL 418.361(2)(f); MSA 17.237(361)(2)(f) on 9-12-66 as a result of the injury of 12-29-61 aggravated by the further work that she did until 3-6-66 and 9-12-66". GMC was ordered to "pay compensation * * * until further order of the bureau, 'but not in excess of 800 weeks from 9-12-66' ", while defendant Second Injury Fund was ordered to pay differential benefits from September 12, 1966. A five-member Workers' Compensation Appeal Board panel affirmed the hearing referee's decision, finding that "[t]he proofs in this cause show plaintiff to be totally and permanently disabled by mental illness and as a result unemployable". By order issued December 5, 1975, the Court of Appeals denied defendants' applications for leave to appeal.

Thereafter, on March 24, 1976, this Court ordered that defendants' applications for leave to appeal be held in abeyance, pending disposition of

[2] MCL 418.361(2); MSA 17.237(361)(2), then in effect, read as follows:

"Total and permanent disability, compensation for which is provided in section 351 means:

"(a) Total and permanent loss of sight of both eyes.

"(b) Loss of both legs or both feet at or above the ankle.

"(c) Loss of both arms or both hands at or above the wrist.

"(d) Loss of any 2 of the members or faculties enumerated in (a), (b) or (c).

"(e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(f) Incurable insanity or imbecility.

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

See MCL 418.361(3); MSA 17.237(361)(3) for the current version of this subsection.

*Redfern* and other cases requiring an examination of incurable insanity or imbecility under the Worker's Disability Compensation Act.[3] *Redfern* was decided on July 17, 1978, and, by order of this Court issued January 8, 1979,[4] the present case was remanded to the WCAB for reconsideration in light of *Redfern.*

On remand, the WCAB, by a 3 to 2 decision, set aside the previous award for total and permanent disability, finding, *inter alia,* that:

"This record establishes neurological or orthopedic disability on a functional basis. The organic basis that the disability might well have is not demonstrated. That disability on a functional basis is not incurable insanity has been established once and for all, at last, by the following comprehensive test set forth at 403 Mich 63, 85:

" 'We conclude that a worker's mental illness is "insanity" if he suffers severe social dysfunction and that a worker's intellectual impairment is "imbecility" if he suffers severe cognitive dysfunction. Social or cognitive dysfunction is "severe" if it affects the quality of the worker's personal, nonvocational life in significant activity comparably to the loss of two members or sight of both eyes, and is incurable if it is unlikely that normal functioning can be restored.'

"To circumvent these words by a finding that a two-member functionally-based loss (falling short of industrial loss of use as measured by the standards of *Burke [v Ontonagon Road Comm,* 391 Mich 103; 214 NW2d 797 (1974)], and *DeGeer [v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974)]), is indeed equal to the loss of the two members referred to in *Redfern, supra,* is a contradiction on its face. It would, moreover, welcome the reappearance of *Sprute*-attendant inequities listed hereinbefore.

"The facts of the instant case are not unlike those of

---

[3] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

[4] 404 Mich 823 (1979).

*Redfern, supra,* as set forth in 403 Mich 63, 71, fn 2. See 1978 WCABO 3149. The *Redfern* Court refers, not to somatic disability with functional basis, but to 'the employee's mental capacity' 403 Mich 63, 78; 'mental illness', *id.* at 81; and 'loss of mental function' *ibid.*

"Plaintiff's 'mental capacity' remains much the same that it was before work-related injury. Indeed, it was that mental predisposition with which defendant accepted plaintiff, which turned a hand injury into a constellation of neurological and orthopedic complaints. While there is some reciprocal effect of worsening symptoms on mental condition, it is minimal. Plaintiff has no mental illness resulting in severe social dysfunction affecting the quality of her personal, nonvocational life in significant activity comparably to the loss of two members or sight of both eyes.

"Plaintiff would still be working had not the machinations attendant upon her various maladies become too much for defendant to cope with. There is nothing to indicate that, with the exception of her relationship with one young foreman, plaintiff's ability to get along with both fellow workers and superiors was not the best.

\* \* \*

"While plaintiff has physical difficulties, she is no recluse. \* \* \*

"Plaintiff's relations with her neighbors are good. \* \* \*

"What is most important is plaintiff's excellent relationship with her sons and with their wives. \* \* \*

"Plaintiff is conversant with her financial situation[.] \* \* \*

"It thus appears that plaintiff has efficiently organized her life to accommodate her physical problems. Even with these, she enjoys a certain amount of independence and can count on a great deal of family support as needed for a physical, not a mental, condition. \* \* \*

\* \* \*

"That the resulting condition is work-related is estab-

lished. That it is incurable insanity (as opposed to general disability on a functional basis) is not. * * *

* * *

"[P]laintiff is not incurably insane as a matter of fact according to the legal standards set forth in *Redfern, supra.*" 1979 WCABO 3051, 3056-3061.

The Court of Appeals granted plaintiff leave to appeal, and affirmed the WCAB. In pertinent part, the Court of Appeals stated:

"If the *Redfern* definition of incurable insanity is interpreted as focusing only on the mental aspects of a disability—a claimant's grasp on reality and ability to interact with his or her environment in a healthy manner—plaintiff is not incurably insane. On the other hand, if the *Redfern* definition of incurable insanity is interpreted as being applicable to a claimant whose 'insanity' is substantially manifested in a panoply of physically disabling symptoms, there is support for the dissenting board members' claim that plaintiff is incurably insane.

"We believe that the majority was correct in adopting the first of these interpretations and, thereby, finding that plaintiff was not incurably insane for purposes of receiving total and permanent disability benefits under MCL 418.361(3)(f); MSA 17.237(361)(3)(f).

"The record in the instant case does not establish severe social dysfunction such as to satisfy the *Redfern* standard. Plaintiff appears to be very capable of meeting her daily needs, arranging for her future, dealing with her physical maladies, and communicating with her neighbors, friends, and relatives." *Modreski v General Motors Corp,* 119 Mich App 198, 205; 326 NW2d 386 (1981).[5]

---

[5] We note, as did the WCAB and the Court of Appeals, that, as a result of her 1961 injury, plaintiff was entitled to general disability benefits for the period between September 12, 1966, and February 27, 1972. However, contrary to any implications of the WCAB and the Court of Appeals, plaintiff was not awarded general disability benefits by the hearing referee as a result of her 1966 injury, although the rates of payment between September 12, 1966, and February 27, 1972,

We granted leave to appeal on August 6, 1982.[6]

## II

Prior to appellate judicial comment on the subject, the WCAB determined that a worker is "insane" when his injury "affects or destroys his mental capacity to the degree that he is deranged and unfit to be employed because of the unreliability of his behavior with concomitant danger to himself and others". *Borg v Fisher Body Division of General Motors Corp,* 1969 WCABO 1246, 1258. However, in *Redfern, supra,* p 84, we stated that the foregoing test was "too restrictive for the purposes of the act to require evidence that the mental illness poses a risk of physical harm."

Subsequent to the decision in *Borg,* the Court of Appeals, in *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574, 579; 189 NW2d 89 (1971), *lv den* 385 Mich 784 (1971), held that:

"An employee is incurably insane under MCL 412.10(b)(6); MSA 17.160(b)(6) if the occupationally related mental or emotional illness which impairs the employee's mental processes is of totally disabling proportions and is likely to be of long and indefinite duration, thus making gainful employment impossible." (Footnotes omitted.)

As noted by this Court,

"*Sprute* says, in effect, that a worker can recover

were adjusted. Indeed, plaintiff did not seek such benefits as a result of her 1966 injury. Instead, she sought scheduled benefits for specific medical losses based on two allegedly total and permanent disabilities, *i.e.,* incurable insanity and the loss of industrial use of her right arm and right leg. See *Redfern, supra,* pp 79-83, and the authorities cited therein, for further explanation of the distinction between scheduled benefits and general disability benefits.

[6] 414 Mich 866 (1982).

total and permanent disability benefits for incurable insanity if

"(1) he has a mental or emotional illness,

"(2) the illness is work related,

"(3) the impairment of his mental processes is of totally disabling proportions,

"(4) it is likely to be of long and indefinite duration, and

"(5) gainful employment is impossible.

"We accept criteria 1, 2 and 4; the incapacity must be attributable to work-related mental illness expected to be of long duration. We do not accept criteria 3 and 5, requiring that the impairment of mental processes be totally disabling precluding gainful employment." (Footnote omitted.) *Redfern, supra,* p 79.

Accordingly, we shifted the focus of the test from the ability to work to the ability to function outside the work setting.

"We conclude that a worker's mental illness is 'insanity' if he suffers severe social dysfunction and that a worker's intellectual impairment is 'imbecility' if he suffers severe cognitive dysfunction. Social or cognitive dysfunction is 'severe' if it affects the quality of the worker's personal, nonvocational life in significant activity comparably to the loss of two members or sight of both eyes, and is incurable if it is unlikely that normal functioning can be restored. The question whether the mental illness or intellectual impairment is work-related is to be decided in accordance with *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978)." *Redfern, supra,* p 85.

## III

Plaintiff would have us declare that functional disability which results from mental illness can serve as a basis for finding a person incurably insane. Specifically, plaintiff claims: (1) that she

has lost the functional use of both her legs and of her right arm as a result of her mental illness, and (2) that such loss has affected the quality of her nonvocational life so as to amount to a severe social dysfunction.

Although we stated in *Redfern* "that it is better that further definition evolve in the administrative and judicial decision of individual cases"[7] and implied "that an organic disorder affecting the brain or nervous system and resulting in physical manifestations * * * [might] constitute 'mental illness' or give rise to 'social dysfunction' ",[8] we believe that the WCAB and the Court of Appeals properly applied the *Redfern* test in this case. The *Redfern* test analogy to physical manifestations "comparabl[e] to the loss of two members or sight of both eyes" was just that—an analogy. It was not meant to imply that physical manifestations which cause functional disabilities and which result from mental illness or from intellectual impairment necessarily constitute a basis for a finding of incurable insanity or imbecility.

Indeed, unless the physical manifestations themselves cause functional disabilities which qualify as total and permanent disability, the requirements of the WDCA are circumvented,[9] *i.e.*, something less than totally and permanently disabling physical consequences of a work-related injury serve as the basis for a finding of totally and

[7] *Redfern, supra,* p 83.

[8] *Redfern, supra,* p 85, fn 20. Perhaps also implicit was that a psychotic disorder resulting in physical manifestations might constitute mental illness or give rise to social dysfunction.

[9] Of course, if the physical manifestations cause functional disabilities which qualify as total and permanent disability, or even as partial disability, the worker is entitled to recover benefits under the WDCA. Likewise, physical manifestations causing functional disabilities which do not amount to total and permanent disability might still qualify a person for general disability benefits. See, generally, *Redfern, supra,* pp 80-83.

permanently disabling incurable insanity or imbecility. Obviously, that is an anomaly not intended by the workers' disability compensation scheme. Thus, we must reaffirm the requirement that severe social or cognitive dysfunction is that which "affects the quality of the worker's personal, nonvocational life in significant activity comparably to the loss of two members or sight of both eyes". *Redfern, supra,* p 85.

## IV

Although plaintiff failed to demonstrate that she is incurably insane within the meaning of the WDCA, we must order remand to the WCAB so that her claim for total and permanent disability benefits based on the alleged loss of industrial use of her right arm and right leg can be adjudicated. Contrary to the opinions of the WCAB and the Court of Appeals and to defendants' contention, plaintiff did not abandon that claim. Indeed, the hearing referee, resting solely on a finding of incurable insanity, never addressed that claim. Thus, plaintiff had no obligation to cross-appeal to preserve the issue because it was not adjudicated adversely to her.

Likewise, in its first opinion in this matter, the WCAB did not address the issue, instead affirming the hearing referee *in toto.* Further, this Court's remand order for reconsideration in light of *Redfern* did not limit the claims which could be addressed, *i.e.,* if plaintiff was found not to be incurably insane, consideration of her claim of loss of industrial use was not precluded. In other words, her claim of loss of industrial use was not outside the scope of the remand order. See, generally, *The Vogue v Shopping Centers, Inc (After Remand),* 402 Mich 546, 552-553; 266 NW2d 148 (1978);

*Howard v Detroit,* 377 Mich 102, 110-111; 139 NW2d 677 (1966); *Bernstein v Shifman,* 355 Mich 398, 402-403; 94 NW2d 821 (1959); *Kleynenberg v Highlands Realty Corp,* 340 Mich 339, 342-343; 65 NW2d 769 (1954); *Vogue Cleaners & Dyers, Inc v Berkowitz,* 296 Mich 565; 296 NW 680 (1941); *Schneyder v Cadillac Motor Car Co,* 280 Mich 127; 273 NW 418 (1937). Indeed, since the WCAB reversed its first decision, thereby denying plaintiff benefits, fairness dictates that it then should have addressed her other claim which had not previously been considered.

Affirmed in part, reversed in part, and remanded to the WCAB for consideration on the merits of plaintiff's claim for total and permanent disability benefits based on the alleged loss of industrial use of her right arm and right leg.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, and BOYLE, JJ., concurred with CAVANAGH, J.