HAKALA v BURROUGHS CORPORATION (AFTER REMAND)

Docket No. 67047. Argued April 6, 1983 (Calendar No. 12).—Decided
    September 19, 1983. Rehearing denied 418 Mich 1201.

    Edward J. Hakala lost his right hand in a job-related accident
    while working for Burroughs Corporation and was paid specific
    loss benefits for the injury. At the time of the loss, he had a
    pre-existing nonoccupational impairment of vision, which
    amounted to 80% uncorrected, but less than 80% corrected. He
    later claimed total and permanent disability under the second-
    injury provision of the workers' compensation act which deems
    certain specific losses to be total and permanent disability when
    incurred by an employee who had already suffered one of those
    specific losses. He was awarded benefits by a hearing referee,
    but the Workers' Compensation Appeal Board reversed on the
    ground that the proper standard was corrected vision, which
    was not an 80% loss. On appeal, the Supreme Court reversed
    the holding of the Court of Appeals that the first disability
    must have been from an injury, and remanded to the board for
    a determination whether the plaintiff's loss of vision rendered
    him permanently disabled for purposes of coverage by the
    Second Injury Fund. Following remand, the board concluded
    that the plaintiff was not permanently disabled. The Court of
    Appeals, J. H. Gillis, P.J., and V. J. Brennan and Bashara, JJ.,
    denied leave to appeal (Docket No. 54084). The plaintiff ap-
    peals.

    In a unanimous opinion by Justice Kavanagh, the Supreme
Court *held:*

    The plaintiff is not permanently disabled and is not entitled
to benefits from the Second Injury Fund because his corrected
vision does not amount to 80% loss of vision. Hereafter, in
assaying claims of total and permanent disability involving the
loss of sight, the corrected vision of the claimant is the stan-
dard to be applied.

    1. The Legislature intended that compensation be paid for a

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 82 Am Jur 2d, Workmen's Compensation §§ 353-355.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 342-344.

specific loss without regard to whether vision could be corrected or restored after an injury. However, it intended that a different standard be used in determining total and permanent disability inasmuch as it provided that only total and permanent loss of sight would constitute the qualifying eye loss for such benefits. To carry out the legislative intent, a "corrected" vision standard should be used in assaying claims and awarding benefits to be paid by the Second Injury Fund for total and permanent disability involving the loss of sight.

2. The Second Injury Fund was created to assist handicapped persons to obtain and maintain employment. That end is served by removing the disincentive for employers in hiring handicapped persons by eliminating the employers' potential liability to pay benefits if a second injury makes a worker eligible.

3. In this case, the plaintiff's corrected vision did not amount to 80% loss of vision, the statutory definition of the loss of an eye, making him ineligible for total and permanent disability benefits.

Affirmed.

*Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43; 210 NW2d 316 (1973), overruled.

1. WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY — SPECIFIC LOSS BENEFITS — SECOND INJURY FUND.

The Legislature intended that a different standard than uncorrected vision be used in determining total and permanent disability from loss of sight inasmuch as it provided that only total and permanent loss of sight would constitute the qualifying eye loss; to carry out the legislative intent a "corrected" vision standard should be used (MCL 418.361, 418.521; MSA 17.237[361], 17.237[521]).

2. WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY — SPECIFIC LOSS BENEFITS.

A worker who was paid specific loss benefits for the job-related loss of his right hand was not deemed totally and permanently disabled by the specific loss as a second injury on the basis of a pre-existing nonoccupational impairment of vision where his corrected vision did not amount to an 80% loss of vision (MCL 418.361, 418.521; MSA 17.237[361], 17.237[521]).

3. WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY — SPECIFIC LOSS BENEFITS.

The corrected vision of a worker is the standard to be applied in assaying a claim for total and permanent disability involving the loss of sight (MCL 418.361, 418.521; MSA 17.237[361], 17.237[521]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert Howes)* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Joseph M. Binno,* Assistant Attorney General, for the Second Injury Fund.

KAVANAGH, J. This case involves the question whether a worker with a pre-existing vision disability who suffers the specific loss of a hand is entitled to total and permanent disability benefits.

We affirm the decision of the Workers' Compensation Appeal Board that he is not.

On September 7, 1962, Edward Hakala lost his right hand in a press accident while working at Burroughs Corporation. Burroughs voluntarily paid specific loss benefits for the injury.

On June 17, 1968, Mr. Hakala filed a petition claiming that he was totally and permanently disabled and asking for benefits from the Second Injury Fund. Before his injury in 1962, he had a nonoccupational vision impairment in his left eye. Thus, his claim was that he was totally and permanently disabled under former 1948 CL 412.8a; MSA 17.158(1):

"If an employee has at the time of injury permanent disability in the form of the loss of a hand or arm or foot or leg or eye and at the time of such injury incurs further permanent disability in the form of the loss of a hand or arm or foot or leg or eye, he shall be deemed to be totally and permanently disabled and shall be paid, from the funds provided in this section, compensation for total and permanent disability after subtracting the amount of compensation received by the employee for both such losses. The payment of compensation under

this section shall begin at the conclusion of the payments made for the second permanent disability."[1]

The section of the workers' compensation statute setting the periods of compensation for specific losses defined the loss of an eye as "[e]ighty percent loss of vision". (The present statute is MCL 418.361; MSA 17.237[361].) There is no dispute that Mr. Hakala's *uncorrected* vision meets this 80%-loss test, and also that his *corrected* vision does not meet the test.

The referee awarded benefits on the theory that the proper standard was Mr. Hakala's uncorrected vision. The WCAB reversed and denied benefits on the ground that the corrected vision standard should be used. The Court of Appeals affirmed, but on a different theory—that the prior disability must have been from an injury. *Hakala v Burroughs Corp,* 48 Mich App 639; 211 NW2d 60 (1973).

On appeal, we reversed the decision of the Court of Appeals, *Hakala v Burroughs Corp,* 393 Mich 153; 224 NW2d 27 (1974), and, *On Rehearing,* 399 Mich 162, 172; 249 NW2d 20 (1976), remanded the matter to the WCAB to determine "whether Hakala's loss of vision rendered him permanently disabled in the sense that term is used for purposes of Second Injury Fund coverage".

The referee made detailed findings of fact in May, 1978, which were affirmed by the WCAB in September, 1980. The Court of Appeals denied leave in April, 1981.

The WCAB attempted to determine what "permanently disabled * * * for purposes of Second Injury Fund coverage" means. Chairman Gill-

---

[1] The present statute is MCL 418.521; MSA 17.237(521). It does not differ in substance from that applicable to Mr. Hakala's injury.

man's concurring opinion said that Hakala was not permanently disabled by his bad eye because he had always been able to work. Member Marshall's opinion for the board objected to this test because the Second Injury Fund was created to cover precisely that group: handicapped workers able to work. Marshall's opinion used a different test: because Hakala's bad eye had not "impaired his ability to do his work or otherwise caused him any employment-related problems", he was not "permanently disabled".

It is apparent from both opinions that the board believes that a corrected- or uncorrected-vision standard in every case for every claim would best serve the purpose of the act. We are not so persuaded.

In *Nulf v Browne-Morse Co,* 402 Mich 309; 262 NW2d 664 (1978), we affirmed the determination that a person who had a permanent disability on account of the loss of one eye was entitled to total and permanent disability benefits from the Second Injury Fund where an industrial accident caused the loss of industrial vision of the other eye.

In *Nulf* we refused to extend the "uncorrected" vision test to total and permanent claims, although we had adopted such a test for specific loss claims in *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967).

We observed:

"In *Hakala v Burroughs Corp (On Rehearing), supra,* this Court recognized that the question of Second Injury Fund benefits in situations involving the loss of an eye could not be adequately resolved by the universal adoption of either the "uncorrected vision" test or the "corrected vision" test. The Court held that the question of entitlement to Second Injury Fund benefits must be determined by reference to the statutory language

creating those benefits found in MCL 418.521; MSA 17.237(521), which requires a determination of whether the employee has suffered a "permanent disability in the form of the loss of a[n] * * * eye". The determination of whether a loss is a permanent disability within the meaning of that section must be evaluated in terms of the underlying legislative purpose of aiding the handicapped in obtaining and maintaining employment." 402 Mich 312-313.

We are persuaded that the Legislature intended compensation for a specific loss without regard to whether the vision could be "corrected" or restored after the injury. *Lindsay, supra.*

We are now persuaded that the Legislature intended that a different standard be used in determining total and permanent disability inasmuch as it provided that only "total and permanent loss of sight" would constitute the qualifying eye loss for such benefits. We are satisfied that to carry out the legislative intent a "corrected" vision standard should hereafter be used in assaying claims for total and permanent disability involving the loss of sight.

We conclude that in this connection that is the sense in which the term "permanently disabled" is used for the purposes of the Second Injury Fund.

We recognize that our holding today may be inconsistent with our decision in *Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43; 210 NW2d 316 (1973). In *Hilton* the permanency of the disability on account of the loss of an eye was not addressed. In any event, to the extent that *Hilton* is inconsistent with this decision it is hereby overruled.

The Second Injury Fund was created to assist the handicapped in obtaining and maintaining employment. That end is served by removing the

disincentive for employers in hiring such handicapped persons by eliminating the employers' potential liability for total and permanent disability benefits if a "second injury" makes the worker eligible.

When we originally considered this case, we were apprehensive that a decision on the point in question might affect that end. We are now content that it does not.

In light of the fact that it is conceded that Mr. Hakala's "corrected" vision does not amount to "[e]ighty percent loss of vision", we affirm the decisions of the WCAB and the Court of Appeals.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with KAVANAGH, J.