CAIN v WASTE MANAGEMENT, INC

Docket Nos. 242104, 242123. Submitted September 4, 2003, at Grand
     Rapids. Decided November 6, 2003, at 9:10 A.M. Leave to appeal
     sought.

     Scott M. Cain brought a claim for worker's compensation benefits
          against his employer, Waste Management, Inc., and its insurer,
          claiming total and permanent disability as a result of the amputa-
          tion of his right leg and the loss of the use of his left leg following
          injuries suffered in the course of his employment. A magistrate
          granted total and permanent disability benefits, finding that the
          plaintiff had lost the industrial use of both legs. The Worker's Com-
          pensation Appellate Commission (WCAC) reversed, holding that the
          magistrate erred in failing to use a "corrected" standard in assess-
          ing the usefulness of the left leg. The Court of Appeals, FITZGERALD,
          P.J., and SAAD and WHITBECK, JJ., affirmed in part and reversed in
          part in an unpublished opinion per curiam, holding that the WCAC
          had exceeded its authority in applying the corrected test (Docket
          No. 214445). The Supreme Court reversed in part the judgment of
          the Court of Appeals and remanded the matter to the WCAC to con-
          sider the plaintiff's specific loss claim, holding that total and per-
          manent disability is not demonstrated where the proofs indicate
          that a braced limb is functional and can support industrial use and
          that, in evaluating a claim under MCL 418.361(3)(g), the corrected
          standard should be applied. Specific loss and total and permanent
          disability entitlements in the worker's compensation statute are
          separately identified in specific subsections. They are unique cate-
          gories with substantial differences. The focus of specific loss is on
          anatomical loss, irrespective of wage earning ability. In contrast,
          the focus of total and permanent disability is on the loss of wage
          earning capacity. While the test for specific loss is an uncorrected
          test, i.e., without regard to whether the loss could be corrected or
          restored, the test for total and permanent disability is a corrected
          test. Thus, in determining specific loss benefits, prostheses are not
          to be considered; in determining total and permanent disability,
          prosthetic devices and implants must be taken into consideration.
          The "corrected" standard accords with the intent of the Legislature
          as expressed in the language of MCL 418.361(3)(g) and is properly
          applied in this case. 465 Mich 509 (2002). On remand, the WCAC

found that the magistrate reasonably accepted the testimony that the injury to the plaintiff's left leg equates with anatomical loss and that the limb retains no substantial utility. The WCAC concluded that there was competent, material, and substantial evidence to support the magistrate's finding that the plaintiff had sustained the "specific loss" of his left leg under MCL 418.361(2)(k) and that, having shown the specific loss of each leg, the plaintiff is entitled to total and permanent disability benefits. The employer and its insurer appealed by leave granted (Docket No. 242104). The Second Injury Fund appealed by leave granted from the same order (Docket No. 242123). The appeals were consolidated.

The Court of Appeals *held*:

The WCAC properly affirmed the magistrate's determination that the plaintiff suffered a specific loss of his left leg, under MCL 418.361(2)(k), where the plaintiff lost the industrial use of his left leg in its uncorrected state. The WCAC properly awarded the plaintiff total and permanent disability benefits under MCL 418.361(3)(b) for his specific (anatomical) loss of his right leg and the specific (industrial) loss of his left leg.

Affirmed.

KELLY, J., concurred with the part of the majority's opinion concerning the award of specific loss benefits (part II [A]) and dissented with regard to the statutory analysis contained in the majority's opinion regarding the award of total and permanent disability benefits (part II [B]). The WCAC erred in concluding that the industrial loss of the plaintiff's left leg in its uncorrected state may constitute one of the two required losses for awarding the plaintiff total and permanent disability benefits under MCL 418.361(3)(b). The term "loss" in MCL 418.361(3)(b) does not refer to the industrial "loss of both legs." The "loss of both legs" in MCL 418.361(3)(b) excludes the category of "loss of industrial use of both legs," which is included in MCL 418.361(3)(g). The term "loss" in the phrase "loss of both legs" in subsection 361(3)(b) does not refer to a combination of anatomical loss and industrial loss. To import a specific loss from subsection 361(2) that is based on the loss of the industrial use of a limb in its uncorrected state as the predicate for an award of total and permanent benefits under subsection 361(3) undermines the purpose of the separate statutory provisions and misses the policy distinctions between awarding benefits under subsections 361(2) and 361(3). The order of the WCAC should be reversed.

Worker's Compensation — Specific Loss — Anatomical Loss — Loss of
    Industrial Use.
    The specific loss of a body part may be demonstrated by showing an
    anatomical loss of the body part or by showing a loss of the indus-
    trial use of the body part (MCL 418.361).

*Pinsky, Smith, Fayette & Hulswit* (by *Edward M. Smith* and *Pamela K. Bratt*) for the plaintiff.

*Straub, Seaman & Allen, P.C.* (by *Daniel W. Grow* and *James M. Straub*), for Waste Management, Inc., and Transportation Insurance Company.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gerald M. Marcinkoski,* Special Assistant Attorney General, for the Second Injury Fund.

Before: Cooper, P.J., and Fitzgerald and Kelly, JJ.

Cooper, P.J. In Docket No. 242104, defendant Waste Management, Inc., and its insurer appeal by leave granted from a May 24, 2002, order of the Worker's Compensation Appellate Commission (WCAC), after remand from our Supreme Court, awarding plaintiff total and permanent disability benefits. In Docket No. 242123, defendant the Second Injury Fund (SIF), Total and Permanent Disability Provisions, appeals by leave granted from the same order. These appeals were consolidated for purposes of appeal. We affirm.

We are asked to determine (1) whether the WCAC used the proper standard in determining "specific loss" and (2) whether the WCAC could properly award plaintiff "total and permanent" disability benefits on the basis of its finding that plaintiff suffered the specific loss of his left leg. After reviewing the decision

in *Cain v Waste Mgt, Inc*,[1] we find that our Supreme Court did not overrule or abrogate its previous decision in *Pipe v Leese Tool & Die Co*.[2] In *Pipe*, the Court held that specific loss can be determined by applying the "loss of industrial use" standard. Accordingly, we uphold the WCAC's decision to affirm the magistrate's determination that plaintiff suffered a specific loss of his left leg, under MCL 418.361(2)(k), where plaintiff lost the industrial use of his left leg in its uncorrected state. We additionally find that the WCAC properly awarded plaintiff total and permanent disability benefits under MCL 418.361(3)(b) for his specific (anatomical) loss of his right leg and the specific (industrial) loss of his left leg. This was a reasonable construction of the statute and the only logical conclusion given the facts in this case. We find this to be especially true given the remedial nature of the Worker's Disability Compensation Act (WDCA)[3] and the WCAC's finding that plaintiff suffered the specific loss of both legs.[4]

## I. FACTS AND PROCEDURAL HISTORY

These appeals arise from injuries plaintiff suffered approximately fifteen years ago. The case has a lengthy appellate history, and the following facts are taken in large part from the facts stated by our Supreme Court in *Cain*.[5]

---

[1] *Cain v Waste Mgt, Inc*, 465 Mich 509; 638 NW2d 98 (2002).

[2] *Pipe v Leese Tool & Die Co*, 410 Mich 510; 302 NW2d 526 (1981).

[3] MCL 418.101 *et seq.*

[4] See *Hagerman v Gencorp Automotive*, 457 Mich 720, 739; 579 NW2d 347 (1998).

[5] *Cain, supra* at 513-516.

Plaintiff worked as a truck driver and trash collector for defendant Waste Management. In October 1988, as he was standing behind his vehicle emptying a rubbish container, he was struck by an automobile that crashed into the back of the truck. Plaintiff's legs were crushed. His right leg was amputated above the knee. Doctors were able to save his left leg with extensive surgery and bracing.

In February 1990, plaintiff was fitted with a right leg prosthesis, and he was able to begin walking. He returned to defendant's employ performing clerical duties. But plaintiff's left leg continued to deteriorate and, in October, he suffered a distal tibia fracture. Doctors diagnosed it as a stress fracture caused by preexisting weakness from the injury sustained in the accident. After extensive physical therapy and further surgery on his left knee, plaintiff was able to return to work in August 1991, first working as a dispatcher and then in the sales department. Defendant voluntarily paid plaintiff 215 weeks of worker's compensation benefits for the "specific loss" of his right leg.[6] But there was disagreement concerning whether plaintiff was entitled to additional benefits.

In August 1992, plaintiff filed a petition for "total and permanent disability benefits" for the "industrial loss of use of both legs." Without citing a particular subsection of MCL 418.361, plaintiff stated the following:

> My legs were crushed in a motor vehicle accident resulting in an amputation above the knee of my right leg. The severity of my injuries to my left leg result [sic] in the

---

[6] See MCL 418.361(2)(k).

industrial loss of use of both legs. I am, therefore, entitled
to permanent and total disability benefits.

At the end of the last hearing day, plaintiff moved to
amend his petition to add a claim for the "specific
loss" of his left leg under MCL 418.361(2)(k), but the
magistrate denied the motion.

Less than a week later, plaintiff filed a second peti-
tion requesting benefits for the specific loss of his left
leg. Plaintiff's second petition stated the following:

In addition to my initial application, I am claiming spe-
cific loss of my left lower extremity for dates of injury of
10/25/88 and 10/21/90. On 10/21/90, while walking down a
ramp at home, I refractured my left tibia causing it to
become necessary for me to wear a permanent brace on my
left leg.

In December 1993, the magistrate issued an opinion
and order awarding specific loss benefits for the loss
of both legs. Although the magistrate had denied the
motion to add a claim for the specific loss of the left
leg, he nonetheless awarded the benefits, reasoning
that plaintiff's initial petition for benefits for the loss
of the industrial use of both legs had implicitly
included a claim for the specific loss of the left leg.
The magistrate found that the left leg had been effec-
tively lost when the stress fracture occurred in Octo-
ber 1990, and that "any hope of restoring the member
was abandoned." Thus, the magistrate ruled that the
SIF was obligated to pay benefits for total and perma-
nent disability because plaintiff had lost the industrial
use of both legs.[7]

---

[7] See MCL 418.361(3)(g).

Defendant and its insurer appealed to the WCAC, which reversed the judgment of the magistrate in April 1997. The WCAC ruled that, in light of the phrasing of plaintiff's initial petition to the bureau, the magistrate had erroneously awarded benefits for the specific loss of the left leg. The WCAC also held that the magistrate had committed legal error in his analysis of plaintiff's claim of total and permanent disability because the magistrate had failed to use a "corrected" (i.e., measured with the help of prosthetics) standard to examine the remaining usefulness of plaintiff's left leg. Applying this standard, the WCAC concluded that plaintiff could not recover total and permanent disability benefits under MCL 418.361(3)(g) because plaintiff retained the industrial use of his left leg when braced.

In May 2000, this Court affirmed in part, reversed in part, vacated in part, and remanded for further proceedings.[8] We affirmed the WCAC's denial of specific loss benefits, agreeing that plaintiff's petition did not state a claim for such benefits. However, this Court reversed and vacated the WCAC's finding that plaintiff was not totally and permanently disabled, holding that claims for total and permanent disability benefits must be analyzed under an "uncorrected" (i.e., measured without the help of prosthetics) test.

Our Supreme Court granted leave to appeal to consider whether the corrected standard applied to a vision claim in *Hakala v Burroughs Corp (After Remand)*,[9] should be applied to a claim regarding

---

[8] Unpublished opinion per curiam of the Court of Appeals, issued May 2, 2000 (Docket No. 214445).

[9] *Hakala v Burroughs Corp (After Remand)*, 417 Mich 359; 338 NW2d 165 (1983).

permanent and total loss of industrial use of both legs, MCL 418.361(3)(g).[10] In holding that the corrected standard applied, our Supreme Court reasoned that the words "total" and "permanent," as used in MCL 418.361(3)(g), suggested a situation that could not be corrected.[11] The Court held that plaintiff had not demonstrated total and permanent disability under subsection 361(3)(g) because his left leg, when braced, could support industrial use.[12]

Our Supreme Court remanded the case "to the WCAC to consider plaintiff's specific loss claim." The relevant footnote to its opinion provided the following:

> We also are satisfied that the WCAC should have considered plaintiff's specific loss claim regarding his left leg. While this claim may not have been pleaded as specifically as it should have been, we discern no prejudice or surprise. Accordingly, we remand this claim to the WCAC for resolution.[13]

On remand, the WCAC found that "[t]he magistrate reasonably accepted the testimony that the injury to plaintiff's left leg equates with anatomical loss and that the limb retains no substantial utility." The WCAC therefore concluded that there was competent, material, and substantial evidence to support the magistrate's 1993 finding that plaintiff had sustained the "specific loss" of his left leg under MCL 418.361(2)(k). The WCAC further held that "[h]aving shown specific loss of each leg, plaintiff is entitled to total and permanent disability benefits."

---

[10] *Cain, supra* at 517.

[11] *Cain, supra* at 520.

[12] *Cain, supra* at 515, 524.

[13] *Id.* at 510 n 1.

## II. ANALYSIS

These consolidated appeals concern the following two related issues: first, whether specific loss under MCL 418.361(2) may still be determined by applying a "loss of industrial use" standard in light of the *Cain* decision; and, second, assuming the "loss of industrial use" standard is appropriate for determining specific loss, whether the specific (industrial) loss of one leg may constitute one of the two losses required for awarding total and permanent disability benefits to an employee for the loss of both legs, MCL 418.361(3)(b). This Court may review questions of law involved with any final order of the WCAC.[14] Issues requiring statutory construction are reviewed de novo by this Court.[15]

### A. AWARD OF SPECIFIC LOSS BENEFITS

There are two broad categories of benefits awarded under the WDCA to workers who are injured or become disabled on the job: scheduled benefits and general disability benefits.[16] This case concerns scheduled benefits, which are payable for the permanent loss of a specific anatomical member or function.[17] There are two types of scheduled benefits: benefits for "specific losses" and benefits for "total and permanent disabilities."

---

[14] MCL 418.861a(3) and (14).

[15] *McCaul v Modern Tile & Carpet, Inc,* 248 Mich App 610, 619; 640 NW2d 589 (2001).

[16] *Cain, supra* at 511; *Redfern v Sparks-Withington Co,* 403 Mich 63, 79; 268 NW2d 28 (1978).

[17] *Redfern, supra* at 79.

The specific loss and total and permanent disability entitlements are now separately identified in their own subsections of MCL 418.361. Subsection 361(2) delineates the specific losses for which benefits will be paid. The pertinent portion of MCL 418.361(2) provides as follows:

> In cases included in the following schedule, the disability in each case shall be considered to continue for the period specified, and the compensation paid for the personal injury shall be 80% of the after-tax average weekly wage subject to the maximum and minimum rates of compensation under this act for the loss of the following:
>
> \*          \*          \*
>
> (k) Leg, 215 weeks.
> An amputation between the knee and foot 7 or more inches below the tibial table (plateau) shall be considered a foot, and an amputation above that point shall be considered a leg.

Although income replacement remains the major function of benefits granted under the WDCA, specific loss benefits have a broader purpose.[18] They focus on the employee's anatomical loss or its equivalent, irrespective of wage earning ability.[19] " '[S]pecific losses affect the quality of life apart from wage earning capacity,' and that 'the impairment of normal function and the effect on the worker's personal life is serious.' "[20] For this reason, specific loss benefits are payable for the period indicated regardless of whether the employee returns to work or is found to have a

---

[18] *Tew v Hillsdale Tool & Mfg Co*, 142 Mich App 29, 37; 369 NW2d 254 (1985).

[19] *Cain, supra* at 524.

[20] *Tew, supra* at 37, quoting *Redfern, supra* at 81.

general disability as a result of the loss.[21] Further, specific loss benefits are payable despite the correctability of the employee's loss.[22]

In *Pipe*, our Supreme Court interpreted the term "loss" in the specific loss provision, MCL 418.361(2), to mean not only anatomical loss but also loss of the industrial use of the body part.[23] The Court held that

> [f]or purposes of determining an award of specific-loss benefits for the loss of a hand, there must be a showing of either anatomical loss or loss of the industrial use of the hand as determined by the loss of the primary service of the hand in industry. We are satisfied that this test is comparable to the test that is most universally applied in the other jurisdictions of this country.[24]

The Court determined that the plaintiff in *Pipe* had lost the industrial use of his right hand and was therefore qualified for specific loss benefits.[25] In making this decision, the Court noted that the plaintiff had suffered an eighty-six percent anatomical loss to his right hand, with no significant power grasp or pinch function, some precision grasp, and some hook and push function.[26]

Courts have since followed the rule of law from *Pipe* that a specific loss may be demonstrated by showing a loss of industrial use.[27] And a leading com-

---

[21] Welch, Worker's Compensation in Michigan: Law & Practice (4th ed), § 12.1.

[22] *Tew, supra* at 35.

[23] *Pipe, supra* at 526-527.

[24] *Id.* at 527.

[25] *Id.* at 528.

[26] *Id.*

[27] See *Kidd v Gen Motors Corp*, 414 Mich 578, 586; 327 NW2d 265 (1982); *O'Connor v Binney Auto Parts*, 203 Mich App 522, 530; 513 NW2d 818 (1994); *Tew, supra* at 35.

mentary on worker's compensation law provides that a worker may claim a specific loss by showing a loss of industrial use of a specific member.[28]

Defendant Waste Management, however, asserts that in light of our Supreme Court's decision in *Cain*, the rule established in *Pipe* is no longer valid. In particular, defendant claims that specific losses can no longer be determined by applying the loss of industrial use standard. Defendant opines that this Court should apply MCL 418.361(2) "as it is written" and not borrow the loss of industrial use standard from the total and permanent disability context for determining a specific loss. Even if *Cain* did not overrule *Pipe*, defendant contends that a corrected test must be used to assess claims of loss of industrial use under MCL 418.361(2). We disagree.

As previously indicated, our Supreme Court in *Cain* stated that it was addressing "only one issue: whether the 'corrected' standard of *Hakala*, applied to a vision claim pursuant to MCL 418.361, should be applied to a permanent and total loss of industrial use of both legs claim pursuant to MCL 418.361(3)(g)."[29] Although the Court highlighted the distinctions between specific loss benefits and total and permanent disability benefits, it did so only within the context of opining that the uncorrected test applicable to measuring specific losses should not apply to measuring a total and permanent disability under MCL 418.361(3)(g).

Notably, the Court did not indicate any intent to call into question the rule of law from its 1981 deci-

---

[28] Welch, *supra* at § 12.2.

[29] *Cain, supra* at 517.

sion in *Pipe* that specific losses may be proved by showing either an anatomical loss or loss of industrial use. If our Supreme Court intended to overrule *Pipe* or call it into doubt, it had the opportunity to make that intention clear. In short, we conclude that *Pipe* is still good law. Accordingly, the WCAC did not err in approving the magistrate's application of the loss of industrial use standard to conclude that plaintiff had sustained the specific loss of his left leg under MCL 418.361(2)(k).

### B. AWARD OF TOTAL AND PERMANENT DISABILITY BENEFITS

Defendant SIF challenges the WCAC's subsequent finding that plaintiff is eligible to receive total and permanent disability benefits having shown the specific loss of both legs under MCL 418.361(2)(k). The WCAC did not specify which subsection of MCL 418.361(3) it relied on in granting plaintiff total and permanent disability benefits. However, the Supreme Court determined that plaintiff could not seek relief for total and permanent disability benefits under MCL 418.361(3)(g) (industrial loss of both legs).[30] Consequently, we logically presume that the WCAC's grant of total and permanent disability benefits on remand was under MCL 418.361(3)(b) (loss of both legs).

Initially, the SIF claims that the WCAC's award of total and permanent disability benefits exceeded the scope of the Supreme Court's order of remand and that such benefits were unavailable absent a specific request from plaintiff. We find no merit to these arguments. The Supreme Court's remand instructions did

---

[30] See *Cain, supra* at 524.

not preclude the WCAC from considering whether
plaintiff was entitled to total and permanent disability
benefits under another subsection of MCL
418.361(3).[31] Rather, the Supreme Court simply
instructed the WCAC to consider whether plaintiff suf-
fered the specific loss of his left leg. There were no
restrictions placed on the WCAC from making the next
logical conclusion if it found that plaintiff had lost the
specific use of both his legs. Further, we do not find
that plaintiff's failure to request total and permanent
disability benefits on remand should negate the WCAC's
award. We note that plaintiff made a general request
for total and permanent disability benefits in his ini-
tial petition. Indeed, our Supreme Court directed the
WCAC to consider plaintiff's specific loss claim despite
his failure to plead it as specifically as possible.[32] Sim-
ilarly, we discern no surprise to the SIF on remand,
and hold that the WCAC could properly award plaintiff
such relief.

Even if the WCAC acted within the scope of the
order of remand, the SIF asserts that plaintiff is not
entitled to total and permanent disability benefits
under MCL 418.361(3)(b). According to the SIF, the
WCAC used an uncorrected test in determining that
plaintiff suffered the loss of both legs and that this
was in violation of the Supreme Court's decision in
*Cain.* Because our Supreme Court concluded that
plaintiff was ineligible to receive benefits under MCL
418.361(3)(g), as he retained the use of his left leg
when braced, the SIF argues that plaintiff cannot now

---

[31] See, e.g., *Modreski v Gen Motors Corp*, 417 Mich 323, 333-334; 337
NW2d 231 (1983).

[32] *Cain, supra* at 510, n 1.

show the total and permanent loss of both legs under MCL 418.361(3)(b). We disagree.

As explained in *Cain*, "[t]otal and permanent disability benefits are intended for those who sustain the more catastrophic loss of more than one member."[33] MCL 418.361(3) provides as follows:

> Total and permanent disability, compensation for which is provided in section 351 means:
>
> (a) Total and permanent loss of sight of both eyes.
>
> (b) Loss of both legs or both feet at or above the ankle.
>
> (c) Loss of both arms or both hands at or above the wrist.
>
> (d) Loss of any 2 of the members or faculties in subdivisions (a), (b), or (c).
>
> (e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.
>
> (f) Incurable insanity or imbecility.
>
> (g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature.[34] The first criterion in determining intent is the specific language of the statute.[35] If reasonable minds can differ as to the meaning of the statute, then judicial construction is appropriate.[36] "The court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construc-

---

[33] *Cain, supra* at 512.

[34] *McCaul, supra* at 619.

[35] *Id.*

[36] *Id.* at 619-620.

tion that best accomplishes the statute's purpose, but should also always use common sense."[37] Accordingly, when construing statutes, courts should seek to avoid a construction that would produce absurd results, injustice, or prejudice to the public interest.[38]

Our Supreme Court in *Cain* specifically discussed whether a corrected or uncorrected test was applicable when determining if an individual was eligible for total and permanent disability benefits under MCL 418.361(3)(g).[39] The Court noted that the "total loss of industrial use" category allows recovery where there is a loss of industrial use of an individual's limb short of actual amputation.[40] It further noted that subsection 361(3)(g) requires proof of an impaired wage earning capacity because it is primarily concerned with an individual's ability to earn a living.[41] The Supreme Court also cited the Legislature's use of the words "total" and "permanent" in subsection 361(3)(g) as suggesting an injury that could not be corrected or improved.[42] Accordingly, the Court held that the test for total and permanent disability under subsection 361(3)(g) would be a corrected test.[43] It is noteworthy for purposes of the instant appeal, however, that the Supreme Court expressly limited its decision in *Cain* to MCL 418.361(3)(g).[44]

---

[37] *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 44; 672 NW2d 884 (2003).

[38] *Id.*

[39] *Cain, supra* at 517.

[40] *Cain, supra* at 512.

[41] *Cain, supra* at 512 n 2, 523.

[42] *Cain, supra* at 519-520.

[43] *Cain, supra* at 519-520.

[44] *Cain, supra* at 517.

Significantly, the WCAC's decision in this appeal is based on plaintiff's entitlement to total and permanent disability benefits under a different subsection, MCL 418.361(3)(b). After reviewing the record, we find that the WCAC's decision was consistent with its conclusion that plaintiff suffered the specific loss of both legs. Following the SIF's rationale in this case would produce absurd results. For instance, a double amputee would be denied total and permanent disability benefits. The WCAC's decision is also in line with the fact that the WDCA "is remedial in nature, and must be 'liberally construed to grant rather than deny benefits.' "[45] We further note that the WCAC's interpretation and application of a provision of the WDCA are entitled to considerable deference from this Court where that interpretation is not clearly incorrect.[46]

The record reveals support for the magistrate's finding that the condition of plaintiff's unbraced left leg is tantamount to an amputation. We also note that even with his left leg braced, plaintiff is still unable to support himself without wearing a prosthesis on his right leg. It would be nonsensical and specious to determine that an individual who suffered the specific loss of each leg would then not also be entitled to total and permanent disability benefits for the loss of both legs. The facts of this case indicate that plaintiff cannot walk without the assistance of a man-made device on each leg. And, even then, he cannot walk on a constant basis because at some point one or both of the devices must be removed for purposes of

---

[45] *Hagerman, supra* at 739, quoting *Sobotka v Chrysler Corp (After Remand),* 447 Mich 1, 20 n 18; 523 NW2d 454 (1994) (BOYLE, J., lead opinion).

[46] *McCaul, supra* at 619.

comfort. Plaintiff's brace and his prosthetic leg are mutually dependent on each other—neither can support plaintiff independently. We find no logic to the position that an individual who has been determined to have suffered the specific loss of both legs would be ineligible to receive total and permanent disability benefits under MCL 418.361(3)(b). To hold otherwise would produce unfair results and would essentially result in a statutory interpretation that exalts form over substance.

Affirmed.

FITZGERALD, J., concurred.

KELLY, J. (*concurring in part and dissenting in part*). Although I concur in part II (A) of the majority opinion, I respectfully disagree with the statutory analysis proffered in part II (B). In lieu of remanding to the Worker's Compensation Appellate Commission (WCAC) to allow it to provide its statutory authority and construction for awarding plaintiff total and permanent disability benefits, I would reverse the WCAC's apparent conclusion that the industrial loss of plaintiff's leg in its uncorrected state could constitute one of the two required losses for awarding plaintiff total and permanent disability benefits under MCL 418.361(3)(b).

On remand, the WCAC's analysis focused on a discussion of MCL 418.361(2)(k) and whether plaintiff had suffered the specific (industrial) loss of his left leg in addition to the specific (anatomical) loss of his right leg. However, the last sentence of the WCAC's opinion was its conclusion that "[h]aving shown specific loss of each leg, plaintiff is entitled to total and permanent disability benefits." The WCAC did not cite a subsection

of MCL 418.361(3), the total and permanent disability provision, for this conclusion. The order effectuating its opinion was similarly imprecise, providing only that "specific loss benefits for plaintiff's left leg are granted in accordance with the attached opinion."

In *Cain v Waste Mgt, Inc*, 465 Mich 509; 638 NW2d 98 (2002), our Supreme Court eliminated the possibility of awarding plaintiff benefits under subsection 361(3)(g) of the Worker's Disability Compensation Act (WDCA) for the "[p]ermanent and total loss of industrial use of both legs . . . ." MCL 418.361(3)(g). Our Supreme Court held that plaintiff had not demonstrated total and permanent disability of his left leg because his left leg, when braced, was functional and could support industrial use. *Cain, supra* at 524. We can therefore only presume that the WCAC, having found that plaintiff suffered two specific losses, awarded plaintiff total and permanent disability benefits under MCL 418.361(3)(b) for the "[l]oss of both legs . . . ." The WCAC presumably concluded that two specific losses from subsection 361(2) entitled plaintiff to an award of total and permanent disability benefits under WDCA subsection 361(3).

Whether the WCAC's award of total and permanent disability benefits was proper is an issue of first impression. Although the issue of first impression concerns a question of law, which is appropriately reviewed de novo, *McCaul v Modern Tile & Carpet, Inc*, 248 Mich App 610, 619; 640 NW2d 589 (2001), the WCAC's one-sentence decision to award total and permanent disability benefits is an unsatisfactory basis for this Court's review, especially in light of the fact that the award presents a statutory construction on an issue of first impression and this Court is to give

"considerable deference" to the WCAC's interpretation and application of a provision of the WDCA. See *McCaul, supra.* I would therefore favor remanding this case to the WCAC for the WCAC to supply its statutory basis and construction for awarding plaintiff total and permanent disability benefits. However, in light of the lengthy appellate history of this case and because the majority has decided this issue, I proffer my alternative statutory construction and conclusion in dissent.

This issue requires analysis of subsections 361(2) and (3), which provide:

> (2) In cases included in the following schedule, the disability in each case shall be considered to continue for the period specified, and the compensation paid for the personal injury shall be 80% of the after-tax average weekly wage subject to the maximum and minimum rates of compensation under this act for the loss of the following:

> (a) Thumb, 65 weeks.
> (b) First finger, 38 weeks.
> (c) Second finger, 33 weeks.
> (d) Third finger, 22 weeks.
> (e) Fourth finger, 16 weeks.

> The loss of the first phalange of the thumb, or of any finger, shall be considered to be equal to the loss of ½ of that thumb or finger, and compensation shall be ½ of the amount above specified.

> The loss of more than 1 phalange shall be considered as the loss of the entire finger or thumb. The amount received for more than 1 finger shall not exceed the amount provided in this schedule for the loss of a hand.

> (f) Great toe, 33 weeks.
> (g) A toe other than the great toe, 11 weeks.

> The loss of the first phalange of any toe shall be considered to be equal to the loss of ½ of that toe, and compensation shall be ½ of the amount above specified.

The loss of more than 1 phalange shall be considered as the loss of the entire toe.

(h) Hand, 215 weeks.

(i) Arm, 269 weeks.

An amputation between the elbow and wrist that is 6 or more inches below the elbow shall be considered a hand, and an amputation above that point shall be considered an arm.

(j) Foot, 162 weeks.

(k) Leg, 215 weeks.

An amputation between the knee and foot 7 or more inches below the tibial table (plateau) shall be considered a foot, and an amputation above that point shall be considered a leg.

(*l*) Eye, 162 weeks.

Eighty percent loss of vision of 1 eye shall constitute the total loss of that eye.

(3) Total and permanent disability, compensation for which is provided in section 351 means:

(a) Total and permanent loss of sight of both eyes.

(b) Loss of both legs or both feet at or above the ankle.

(c) Loss of both arms or both hands at or above the wrist.

(d) Loss of any 2 of the members or faculties in subdivisions (a), (b), or (c).

(e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

(f) Incurable insanity or imbecility.

(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury.

Plaintiff opines that our Supreme Court's remand order encompasses an award of total and permanent disability benefits under MCL 418.361(3)(b) for the "[l]oss of both legs" because this result is the "logical

and legal consequence" of the WCAC's finding that plaintiff suffered two specific losses under MCL 418.361(2)(k). According to plaintiff, it is "as simple as adding one plus one to get the two qualifying losses."

In contrast, the Second Injury Fund (SIF) complains that plaintiff "bootstrapped" the specific (anatomical) loss of his right leg with the specific (industrial) loss of the left leg, two inquires decided under the "uncorrected" test, in order to receive total and permanent disability benefits, which are awarded on the basis of the corrected test. The SIF argues that the WCAC's award therefore contravenes our Supreme Court's opinion in *Cain* that plaintiff was not entitled to total and permanent disability benefits under the "corrected" test.

Plaintiff concedes the seeming inconsistency in finding that a claimant who cannot qualify for total and permanent disability benefits for the loss of industrial use of both legs under the "corrected" test may qualify for total and permanent disability benefits by adding together two specific losses found by application of the "uncorrected" test. However, plaintiff attributes the alleged inconsistency not to the WCAC's erroneous statutory construction, but to the alleged error of our Supreme Court's holding in *Cain* that the corrected test applies to subsection 361(3)(g) in the total and permanent context.[1]

---

[1] Plaintiff's assertion notwithstanding, whether our Supreme Court correctly held in *Cain* that prosthetics should not be considered in a total and permanent disability claim is not an issue properly before this Court. A decision of the majority of the justices of our Supreme Court is binding on lower courts. See *Negri v Slotkin*, 397 Mich 105, 107; 244 NW2d 98 (1976).

I agree with the SIF that awarding an employee total and permanent disability benefits under MCL 418.361(3)(b) ("Loss of both legs") on the basis of the employee's specific (anatomical) loss of one leg and the specific (industrial) loss of the other leg requires an unreasonable construction of MCL 418.361 that does not accomplish the twin purposes of the statute. As our Supreme Court stated in *Cain, supra* at 521, benefits for specific losses and benefits for total and permanent disabilities are "unique categories with substantial differences."

"Loss of industrial use" is a special category of total and permanent disability benefits that was added to the total and permanent disability definition after its original formulation. *Cain, supra* at 512. This special category, found in subsection 361(3)(g) quoted above, allows recovery for total and permanent disability where there is no anatomical loss but where there is a loss of industrial use. *Id.* Hence, even if an employee does not suffer actual amputation of one or both legs so as to qualify for specific loss benefits, the employee may nevertheless be entitled to scheduled benefits for injury to both legs if the employee has lost the industrial use of his legs. *Id.*

The word "[l]oss" in the phrase "[l]oss of both legs" in MCL 418.361(3)(b), the statute upon which the WCAC's award was presumably based, does not indicate on its face whether the provision refers to anatomical loss or industrial loss or a combination thereof. If reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *McCaul, supra* at 619-620. The court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that

best accomplishes the purpose of the statute. *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994).

When read in conjunction with subsection (g) of MCL 418.361(3), it becomes clear that "[l]oss" in subsection 361(3)(b) does not refer to *industrial* "loss of both legs." The Legislature expressly included "loss of industrial use of both legs" in subsection 361(3)(g). Therefore, "[l]oss of both legs" in subsection 361(3)(b) excludes the category of "loss of industrial use of both legs." Under principles of statutory construction, this Court is required to give effect to every statutory clause and to consider the statutory context holistically. *Eversman v Concrete Cutting & Breaking*, 463 Mich 86, 99; 614 NW2d 862 (2000) (CAVANAGH, J., concurring in the result).

The Legislature's inclusion of "loss of industrial use of both legs" in subsection 361(3)(g) also reflects the Legislature's judgment that only the industrial loss of *both* limbs constitutes a total and permanent disability. The Legislature has made the policy decision that loss of industrial use rises only to the level of a total and permanent disability when the industrial use of *both* legs, or both hands, or both arms, or one leg and one arm have been lost. MCL 418.361(3)(g).

Accordingly, I do not find that the word "[l]oss" in the phrase "[l]oss of both legs" in MCL 418.361(3)(b) refers to a combination of anatomical loss and industrial loss, which is the result reached by the majority. My construction comports with the object of the total and permanent disability provision and the unique harm it is designed to remedy.

Total and permanent disability benefits is a category of benefits that substantially differs from the

specific loss benefits category. *Cain, supra* at 521. As a threshold matter, the two categories have different statutory bases. Subsection 361(2) of the WDCA delineates the specific losses for which benefits will be paid, whereas subsection 361(3) of the WDCA delineates the total and permanent disabilities for which benefits will be paid. Moreover, benefits for a specific loss predicated on a loss of industrial use are awarded for the claimant's loss, not for the claimant's disability; benefits for a total and permanent disability premised on a loss of industrial use of two limbs are awarded for the claimant's disability. *Cain, supra* at 523-524 (adopting the WCAC's opinion). Accordingly, the test for total and permanent disability is a corrected test, whereas a specific loss is viewed in its uncorrected state, with an emphasis on the actual anatomical loss. *Id.*

Therefore, to import a specific loss from MCL 418.361(2) that is based on the loss of industrial use of a limb in its uncorrected state as the predicate for an award of total and permanent disability benefits under MCL 418.361(3) undermines the purposes of the separate statutory provisions and misses the policy distinctions between awarding benefits under MCL 418.361(2) and (3).

Our Supreme Court found that plaintiff had not demonstrated the loss of industrial use of his left leg because his left leg, when braced, was functional and could support industrial use. *Cain, supra* at 524. Therefore, within the total and permanent disability setting, plaintiff has suffered only the anatomical loss of his right leg and not the industrial loss of his left leg. Consequently, he cannot claim an award of total and permanent disability benefits under MCL

418.361(3)(b) for the "[l]oss of both legs . . . ." I would reverse the WCAC's apparent conclusion that the industrial loss of plaintiff's left leg in its uncorrected state could constitute one of the two required losses for awarding plaintiff total and permanent disability benefits under MCL 418.361(3)(b).