CHASE v TERRA NOVA INDUSTRIES

Docket No. 262230. Submitted November 7, 2006, at Detroit. Decided
   November 14, 2006, at 9:00 a.m.

John L. Chase sought workers' compensation benefits for a foot
   injury he suffered while working for M.D. Plumbing & Heating
   Company, a subcontractor of W.E. O'Neil Construction Company,
   which had been hired to construct one of the stores in a new
   shopping mall complex. The mall construction project was under-
   taken by general contractor Sordoni Skanska Construction Com-
   pany, which had obtained an owner-controlled insurance policy—
   also known as a "wrap-up policy"—from St. Paul Guardian
   Insurance Company pursuant to MCL 418.621(3). A workers'
   compensation magistrate granted Chase an open award of benefits
   without considering whether State Farm Fire & Casualty Insur-
   ance Company insured the plaintiff's employer, ruling instead that
   liability should be placed on W.E. O'Neil, which was insured by
   Argonaut Midwest Insurance Company. On appeal, the Workers'
   Compensation Appellate Commission (WCAC) remanded the case
   to the magistrate to consider State Farm's liability. On remand,
   the magistrate concluded that State Farm was estopped from
   denying coverage and further noted that St. Paul had been named
   as a carrier in filings made after the remand order, but the
   magistrate was unable to resolve the liability issues before his
   term expired. The magistrate to whom the matter was reassigned
   concluded that St. Paul was liable under the terms of the wrap-up
   policy. St. Paul and Sordoni appealed to the WCAC, which affirmed
   the magistrate's conclusion. The Court of Appeals granted St. Paul
   and Sordoni's application for leave to appeal.

   The Court of Appeals *held*:

   1. The plain language of the applicable provision of the Work-
   er's Disability Compensation Act (WDCA), MCL 418.852(1), re-
   quires the magistrate to determine liability at the time benefits are
   awarded; however, reasonable minds could differ with respect to
   how that provision applies to insurance carriers whose potential
   liability was not discovered until after benefits were awarded.
   Therefore, this matter must be remanded to the WCAC for
   construction and analysis of this provision.

2. The doctrine of laches does not bar plaintiff's claim because there is no evidence that plaintiff lacked due diligence in asserting his claim against the appellants, nor have the appellants established that they suffered the requisite prejudice.

3. The WCAC erred in concluding that either MCL 418.621(3) or the authorization order issued pursuant to that provision required St. Paul Guardian Insurance Company to issue a policy covering all the work of all employees on all jobs performed at the construction site. Rather, St. Paul was required only to cover certain construction jobs that were supposedly set forth in a separate exhibit, labeled Exhibit B. However, that exhibit consists only of an overhead map of the entire construction site. Therefore, on remand, the WCAC must resolve the apparent discrepancy between the authorization order and Exhibit B to determine whether the plaintiff's job was among those that were to be covered under the St. Paul policy.

4. The WCAC failed to analyze that portion of the authorization order that specified that St. Paul was required to cover all employers working at the site except those that had not executed an "Exhibit A" agreement. Neither the plaintiff's employer nor the contractor who hired the plaintiff's employer evidently executed an Exhibit A agreement. On remand, the WCAC must determine whether Exhibit A agreements were in fact executed, and, if not, whether the failure to do so precludes the appellants' liability.

WCAC order vacated and case remanded for further proceedings.

*Charfoos, Reiter, Peterson, Jones, Dorland & Hébert, P.C.* (by *Kenneth E. Jones*), for State Farm Fire & Casualty Company.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for Amerisure Insurance Company.

*Kluczynski, Girtz, Zamler & McCubbrey, P.C.* (by *David H. Williams*), for O'Neil Construction and Argonaut Midwest Insurance Company.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor*), for St. Paul Guardian Insurance Company and Sordoni Skanska Construction, Inc.

*Hutson, Sawyer, Reilly, Rupp & Schroeder* (by *Michael J. Reilly*) for M.D. Plumbing & Heating Company, Inc.

*Plunkett & Cooney, P.C.* (by *Ronald A. Weglarz*), for Terra Nova Industries.

Before: WHITBECK, C.J., and SAWYER and JANSEN, JJ.

PER CURIAM. Defendants-appellants Sordoni Skanska Construction Company and St. Paul Guardian Insurance Company appeal by leave granted the order of the Workers' Compensation Appellate Commission (WCAC), which affirmed a magistrate's decision that appellants were the parties responsible for the payment of benefits to plaintiff for a work-related foot injury. We vacate the order of the WCAC and remand for further proceedings.

This case arises out of the construction of Great Lakes Crossing Mall in Auburn Hills, Michigan. Appellant Sordoni Skanska Construction Company (Sordoni) was retained to be the general contractor on the Great Lakes Crossing Mall project. Because of the magnitude of the construction project, Sordoni was able to obtain an "owner controlled insurance policy," or "wrap-up" policy, pursuant to MCL 418.621(3), which provides in part:

> Under procedures and conditions specifically determined by the director, a separate insurance policy may be issued to cover employers performing work at a specified construction site if the director finds that the liability under this act of each employer to all his or her employees would at all times be fully secured and the cost of construction at the site, not including the cost of land acquisition, will exceed $65,000,000.00, and the contemplated completion period for the construction will be 5 years or less.

Appellant St. Paul Guardian Insurance Company (St. Paul) issued the wrap-up policy. The issue presented in this case is whether appellants are liable for plaintiff's benefits under that policy.

After the policy was issued, certain property at the mall site was sold to Bass Pro Outdoor World, L.P. Plaintiff's employer, defendant M.D. Plumbing & Heating Company, was a subcontractor for defendant W.E. O'Neil Construction Company, which was the general contractor retained by Bass Pro Outdoor to construct the Bass Pro Outdoor store on the mall site. On August 20, 1998, plaintiff injured his foot while working at the site.

Plaintiff filed an application for workers' compensation benefits. Appellants were not parties to the initial proceedings. Following a hearing, a magistrate granted plaintiff an open award of benefits. One issue presented during the initial proceedings was whether plaintiff's employer was insured by State Farm Fire & Casualty Insurance Company (State Farm). However, the magistrate concluded that it lacked jurisdiction to consider the issue of State Farm's liability. As a result, the magistrate found that plaintiff's employer was uninsured, and that liability for the benefits was to be placed on the general contractor at the Bass Pro Outdoor site, W.E. O'Neil Construction Company, and its insurer, Argonaut Midwest Insurance Company.

On appeal to the WCAC, plaintiff's employer and W.E. O'Neil Construction Company argued that there was evidence that State Farm insured plaintiff's employer. The WCAC found that the magistrate did indeed have jurisdiction to determine whether State Farm was liable in this matter, and remanded the case to the magistrate to address the issue. The WCAC retained jurisdiction.

On remand, the magistrate concluded that State Farm was estopped from denying coverage. The magistrate also acknowledged that, after the WCAC's remand order, the parties had filed additional applications, which named St. Paul as a carrier under the wrap-up policy. However, the magistrate was unable to resolve the issues pertaining to liability under the wrap-up policy before the expiration of his term, and declared a mistrial on those issues. As a result, the matter was reassigned to another magistrate, who conducted several hearings. At the conclusion of those hearings, the magistrate decided that St. Paul was liable under the terms of the wrap-up policy. According to the magistrate, appellants could have exempted the Bass Pro Outdoor property from the construction project, but failed to do so.

Appellants appealed to the WCAC. Appellants argued that they were not timely made parties to the litigation, and therefore that plaintiff's claims against them were barred by statute and the doctrine of laches. Appellants further argued that the magistrate's decision was erroneous because plaintiff's employer had not been working under the auspices of Sordoni, but instead on the entirely separate Bass Pro Outdoor project. Appellants contended that there was no basis on which to impose liability on appellants for an injury that occurred to the employee of a subcontractor who had no contractual relationship with appellants.

The WCAC found appellants' claims unconvincing. In regard to appellants' late involvement in the proceedings, the WCAC found that the situation was created by appellants' own failure to carve out the Bass Pro Outdoor project after the property for that store was sold. The WCAC also found that appellants were not prejudiced by their absence from the initial proceed-

ings. With respect to appellants' argument that plaintiff's employer was not covered under the wrap-up policy, the WCAC concluded that because the area where plaintiff was injured was part of the original site plan, and because there had been no effort to carve out that area from the project, the parcel in question remained part of the area insured by St. Paul under the wrap-up policy. This Court granted appellants' application for leave to appeal.

The WCAC must review the magistrate's decision under the "substantial evidence" standard, while this Court reviews the WCAC's decision under the "any evidence" standard. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709; 614 NW2d 607 (2000). Review by this Court begins with the WCAC's decision, not that of the magistrate. *Id.* We review de novo questions of law in workers' compensation cases. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). A decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework. *Id.* at 401-402.

Appellants first claim that the magistrate and WCAC should never have addressed the issue of coverage under the wrap-up policy. According to appellants, because they were not involved in these proceedings at the time the initial award of benefits was granted, consideration of the issue was barred by MCL 418.852(1), as well as the doctrine of laches.[1]

MCL 418.852(1) states: "The liability of a carrier or fund regarding a claim under this act shall be deter-

---

[1] Laches is an equitable doctrine. While the WCAC has no equitable jurisdiction, it is well established that the WCAC may apply equitable principles in appropriate instances to further the purposes of the Worker's Disability Compensation Act. *Lulgjuraj v Chrysler Corp*, 185 Mich App 539, 544-545; 463 NW2d 152 (1990).

mined by the hearing referee or worker's compensation magistrate, as applicable, at the time of the award of benefits." "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent." *Ross v Dep't of Treasury*, 255 Mich App 51, 55; 662 NW2d 36 (2003). "The Legislature is presumed to intend the meaning it plainly expressed." *Id.*

Here, the plain language of the provision states that liability "shall" be determined "at the time of the award of benefits." In this case, no such determination was made with respect to appellants at the time of the initial award. Because "shall" connotes a mandatory requirement,[2] the plain language of MCL 418.852(1), at least arguably, supports appellants' position. However, we also find that reasonable minds could differ with respect to whether the statute means that the liability of a carrier must be determined at the time of the award where, as here, the carrier was not a party to the proceedings at the time of the award, and the carrier's potential liability was allegedly not discovered by the parties seeking the carrier's involvement until after benefits were awarded. As a result, construction of MCL 418.852(1) is warranted. *Ross, supra.* Because we generally defer to the WCAC's interpretation and application of the Worker's Disability Compensation Act,[3] and because the WCAC in this case never addressed appellants' argument regarding MCL 418.852(1), we find it prudent to remand this matter to the WCAC for an initial construction and analysis.

As for appellants' argument regarding the doctrine of laches, we find no error. Application of the doctrine requires the passage of time combined with a change in

---

[2] See *Kowalski v Fiutowski*, 247 Mich App 156, 160-161; 635 NW2d 502 (2001).

[3] *Cain v Waste Mgt, Inc*, 259 Mich App 350, 366; 674 NW2d 383 (2003).

conditions that would make it inequitable to enforce a claim against the defendant. *Gallagher v Keefe*, 232 Mich App 363, 369; 591 NW2d 297 (1998). "The defendant must prove a lack of due diligence on the part of the plaintiff resulting in some prejudice to defendant." *Id.*

In the instant case, there is no evidence that plaintiff lacked due diligence in asserting a claim against appellants. Further, we are not convinced that appellants have established the requisite prejudice. Appellants contend that they were prejudiced because they were unable to defend against the merits of plaintiff's claim for benefits. However, in this appeal, appellants have offered no evidence or argument to even suggest that plaintiff was not in fact entitled to benefits. The burden was on appellants to establish prejudice, and we find their bald assertion to be insufficient in this regard.

Next, appellants contend that neither the controlling statute, MCL 418.621(3), nor the wrap-up policy itself, provides coverage for plaintiff's injury. In addressing appellants' contention in this regard below, the WCAC ruled that because plaintiff was injured in an area that was part of the original site plan, and because no subsequent effort had been made to carve out that area from the project, the area was insured by the wrap-up policy. In our opinion, the WCAC's focus was misdirected.

Pursuant to MCL 418.621(3), appellant St. Paul was only allowed to issue coverage as authorized by the director. In this case, the authorization order, which was signed by a deputy director, authorized appellant St. Paul to issue a policy "to cover employers performing work at the construction site specified below under the conditions and procedures specified herein, on or after June 24, 1997 in connection with (i) those certain

construction jobs set forth in Exhibit B attached hereto." Under the plain language of the authorization order, St. Paul was required to cover employers working at the site "in connection with . . . certain construction jobs set forth in Exhibit B." Had the deputy director intended to require St. Paul to cover work on all jobs, performed by all employers at the site, he could easily have done so. However, the authorization order clearly states that only certain jobs at the site were to be covered by St. Paul. Consequently, focusing only on the site of the injury, as the WCAC did, was improper. Simply put, we do not read MCL 418.621(3) or the deputy director's authorization order as requiring St. Paul to cover all the work of all employees on all jobs performed at the site, but only "certain construction jobs" at the site. The WCAC erred in concluding otherwise.

Logically, then, the question becomes whether plaintiff's job was one of those "certain construction jobs set forth in Exhibit B." However, the problem with answering that question is that Exhibit B to the authorization order was simply an overhead map of the entire mall site. In other words, there were no "certain construction jobs set forth in Exhibit B." Taken literally, because only those jobs set forth in Exhibit B were to be covered, and because there were no jobs set forth in Exhibit B, no jobs at the site were covered by St. Paul's policy. However, the deputy director clearly intended to authorize *some* coverage, and such a literal interpretation would be unreasonable. On the other hand, the shortcomings of Exhibit B to the authorization order do not necessarily justify the WCAC's interpretation that all jobs at the entire site were to be covered under the policy. Because the legal effect of any incongruity between the authorization order and Exhibit B was not specifically raised before or addressed by the WCAC,

this Court lacks the authority to address the issue. *Calovecchi v Michigan*, 461 Mich 616, 626; 611 NW2d 300 (2000). As a result, on remand, the WCAC shall also consider and resolve the apparent incongruity between the authorization order and Exhibit B thereto.

Moreover, regardless of any ambiguity created by Exhibit B, the WCAC's analysis was incomplete. Paragraph 6(A) of the deputy director's authorization order stated that St. Paul's policy was to cover all employers working at the designated site, "except where an agreement specified in paragraph 5 above has not been executed." In turn, paragraph 5 of the authorization order stated:

> Every general insurer whose insured employer is to become engaged upon work on the site designated above or the employer to the extent that the employer is self-insuring the obligations under the Act shall enter into an agreement with the specific risk insurer in the form attached hereto as Exhibit A, incorporated herein by reference, and made a part hereof, as a condition precedent to such insured employer or self-insuring employer engaging its employees in work on such site. This requirement shall not extend to vendors, truckers, suppliers, material dealers, and others whose function is solely to supply or transport debris material, equipment, or parts to or from the construction site.

Therefore, appellant St. Paul was required to cover all employers working at the site, except those employers that had not executed an Exhibit A agreement. In this case, it appears that neither plaintiff's employer nor the contractor who hired plaintiff's employer executed an Exhibit A agreement with St. Paul. Without an explanation from the WCAC regarding why such an agreement was not required in this case, the WCAC's decision was incomplete. On remand, the WCAC shall determine whether the requisite Exhibit A agreements

were executed, and, if that query is answered in the negative, the WCAC shall determine whether that failure precludes appellants' liability.

The WCAC order is vacated, and this case is remanded to the WCAC for further proceedings consistent with this opinion. We do not retain jurisdiction.